Filed 9/8/15  In re Victoria M. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

In re VICTORIA M., a Person Coming Under the Juvenile Court Law.

SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,

        Plaintiff and Respondent,

        v.

ERNESTO M.,

        Defendant and Appellant.

D067989

(Super. Ct. No. CJ1200)

APPEAL from an order of the Superior Court of San Diego County, Laura J. Birkmeyer, Judge.  Affirmed.

Neil R. Trop, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Jennifer Stone, Deputy County Counsel, for Plaintiff and Respondent.

Ernesto M. (Ernesto) appeals a juvenile court's order assuming dependency jurisdiction of his daughter, Victoria M. (Victoria), under Welfare and Institutions Code[1] section 300, subdivisions (a) and (d). At the contested jurisdictional and dispositional hearing, the court permitted Victoria to testify in chambers outside the presence of her parents. (§ 350, subd. (b).) Ernesto contends there was no admissible evidence to support Victoria's section 350, subdivision (b) motion to exclude her parents from her testimony. He also contends the evidence was insufficient to support the court's true findings that Victoria suffered serious physical harm inflicted nonaccidentally and sexual abuse by Ernesto. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

For the past several years, 15-year-old Victoria had been living with her father and primary caretaker, 38-year-old Ernesto. Her parents divorced when she was not yet two based on allegations by Victoria's mother of physical abuse by Ernesto. He had formerly been in the military, and expected his daughter to stay focused on school and abide by a regimented daily schedule. When Victoria needed to be disciplined or punished, Ernesto had at times required her to do push-ups or jumping jacks, or get on her knees and balance small cans on extended arms.

In mid-November 2014, Victoria arrived at school with a black eye, which she initially told teachers was an accident but eventually revealed had been caused by her father punching her. One week later, she arrived at school with significant neck pain and

---

[1]     All further statutory references are to the Welfare and Institutions Code.

difficulty walking upright. She was transported by ambulance to an emergency room, where a medical exam concluded she had (1) a cervical sprain (neck injury); (2) bruises on both ear lobes consistent with her ears being grabbed and pulled; (3) bruising and pain on her left hip bone consistent with being kneed; and (4) painful, tender areas on her neck and back consistent with being choked, slammed, thrown, or flung around. The examining doctor concluded Victoria's injuries were consistent with her reported physical abuse.

Victoria and Ernesto gave different accounts of two physical altercations. The first altercation occurred after she lied to him about staying after school for tutoring when she was actually hanging out with friends. According to Victoria, that evening, Ernesto pushed her off a chair causing her head to hit the closet, he kicked her, punched her, and called her a "spoiled bitch" and a "lying bitch." In contrast, Ernesto characterized Victoria as the aggressor while he had merely tried to defend himself and/or restrain her. He admitted using harsh language ("Stop acting like a bitch" and "Your cunt of a friend"), slapping Victoria's face, and buying her makeup to conceal the black eye that developed. Other house inhabitants confirmed that tensions had been escalating between the two and Victoria's black eye occurred after a "commotion" with Ernesto.

During the second altercation, the two were by themselves in the house. Victoria had been distant, unhappy, and wanted to be left alone in her room. After being ignored and feeling slighted, Ernesto knocked Victoria off her chair where she had been trying to do homework, then grabbed her ears and "tried to pull [her] head apart like he was ripping [her] head open." He banged her head on the floor, pinned her down, kneed her

3

hip, choked her, tried to cover her nose and mouth, and slammed her on the floor. Victoria tried to physically fight back, but Ernesto's violence and anger only got worse. She woke up the next day in significant pain, but resolved to go to school for help. Ernesto told her to make up a believable story about her injuries, e.g., she had been hit by falling boxes.

According to Ernesto, Victoria sustained injuries from plastic boxes that accidentally fell on her after he had asked her for some help in the garage. She left the garage, and he did not immediately check on her. Ernesto acknowledged that at some point in the evening, he went into Victoria's room, they verbally argued, and then physically fought. In his account of events, Victoria was aggressive and flailing ("attempted to bite" and "stomped on [my] feet"), and his maneuvers were purely defensive like the first altercation to quiet and calm her down. He had no explanation for how Victoria sustained bruises to both her ears, and he denied pulling her ears, choking, or kneeing her. He did not sustain any injuries.

In response to direct questions during interviews, Victoria also told social workers and doctors that in the past two years, Ernesto had routinely fondled her breasts ("he puts his hand under my shirt and grabs my boob and falls asleep"), slapped her butt, and touched her crotch area, sometimes acting like it was an accident or a joke, and occasionally accompanied by comments that he was the only one who could touch her like that. The fondling started when she had moved to live with him, and they were sleeping in the same bed. Ernesto denied all inappropriate touching, but said there had been one time he felt for a lump in her breast over her clothes to alleviate Victoria's

4

concerns about breast cancer. When asked by a social worker whether she was scared to go home, Victoria said she was not worried about the "sexual stuff," but terrified of the "physical stuff."

In late November 2014, the San Diego County Health and Human Services Agency (the Agency) filed a dependency petition on behalf of Victoria under section 300, subdivision (a), which was subsequently amended to include section 300, subdivision (d). The original and amended petitions alleged that during two physical altercations and/or through excessive discipline, Ernesto had subjected Victoria to serious physical harm and/or there was a substantial risk she would suffer serious physical harm inflicted nonaccidentally. The amended petition additionally alleged that Ernesto had sexually abused Victoria by inappropriately touching and fondling her. Victoria was detained and placed in the home of her best friend's mother.

The contested jurisdictional and dispositional hearing occurred on various dates in late February through April 2015. As we discuss in more detail below, the court heard testimony from Victoria (in chambers outside the presence of her parents), two social workers, Ernesto, Victoria's mother, and her paternal grandmother. After closing arguments, the court (Judge Birkmeyer) stated on the record its basis for allowing Victoria to testify in chambers pursuant to section 350, subdivision (b). The court then made true findings by clear and convincing evidence on the Agency's section 300, subdivision (a) and (d) allegations. In reaching its decision, the court discussed its rationale at length, including why it found certain witnesses' testimony to be believable or credible, and conversely, implausible.

5

DISCUSSION

I

*Section 350, Subdivision (b) Motion*

Section 350, subdivision (b) provides that in a dependency proceeding, the "testimony of a minor may be taken in chambers and outside the presence of the minor's parent or parents, if the minor's parent or parents are represented by counsel, the counsel is present and any of the following circumstances exist:  [¶]  (1) The court determines that testimony in chambers is necessary to ensure truthful testimony.  [¶]  (2) The minor is likely to be intimidated by a formal courtroom setting.  [¶]  (3) The minor is afraid to testify in front of his or her parent or parents.  [¶]  After testimony in chambers, the parent or parents of the minor may elect to have the court reporter read back the testimony or have the testimony summarized by counsel for the parent or parents."

Here, Victoria's counsel requested that she be allowed to testify in chambers at the jurisdictional and dispositional hearing.  Judge Birkmeyer had previously read the Agency's reports, and at a motion hearing on the matter, heard arguments and received an offer of proof by Victoria's counsel, who represented that Victoria was afraid to testify in a room with her father present, she was scared of her father and, throughout proceedings, had declined visits with him.  The court ordered Victoria's testimony would "begin in chambers" outside the presence of Ernesto—the propriety of which would be reevaluated as needed.  Ernesto's counsel would be present in chambers, and a transcription streaming technology would be utilized, allowing Victoria's testimony to display in real time in the courtroom.

6

Victoria's testimony at the jurisdictional and dispositional hearing proceeded in this manner without further evaluation. After closing arguments, the court stated that the nature of Victoria's testimony, her obvious fear of her father, and her emotional responses to a number of questions, confirmed that allowing Victoria to testify in chambers had been necessary to ensure truthful testimony pursuant to section 350, subdivision (b). Ernesto viewed the testimony in real time and had the opportunity to consult with his counsel prior to Victoria's cross-examination.

Ernesto contends on appeal that the court's procedural handling of the section 350, subdivision (b) motion was flawed because "no evidence was presented" to allow the court to satisfy the statutory requirements. We conclude the statutory requirements were satisfied. (*In re S.C.* (2006) 138 Cal.App.4th 396, 426; *In re Katrina L.* (1988) 200 Cal.App.3d 1288, 1297 [proper for the court to rely on statements in the social worker's report in determining whether there was a basis for in-chambers testimony pursuant to § 350].) The Agency's detention and jurisdiction/disposition reports supported Victoria's fear of testifying against her father in his presence because she had been severely punished by him for acts of defiance. Furthermore, the court accepted counsel's offer of proof, which was borne out by testimonial evidence. Under the circumstances, the procedure devised by the court—to permit Victoria to begin testifying in chambers so her demeanor and testimony could be assessed pending further commentary by counsel—was not unreasonable to ensure truthful testimony and prevent unnecessary trauma.

## II

### *Sufficiency of Evidence to Support Jurisdictional Findings*

A.      Standard of Review

" 'When the sufficiency of the evidence to support a finding or order is challenged on appeal, the reviewing court must determine if there is any substantial evidence, that is, evidence which is reasonable, credible, and of solid value to support the conclusion of the trier of fact. [Citation.] In making this determination, all conflicts [in the evidence and in reasonable inferences from the evidence] are to be resolved in favor of the prevailing party, and issues of fact and credibility are questions for the trier of fact. [Citation.] In dependency proceedings, a trial court's determination will not be disturbed unless it exceeds the bounds of reason. [Citation.]' " (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393 [quoting *In re Ricardo L.* (2003) 109 Cal.App.4th 552, 564].) An appellate court "has no power to judge the effect or value of, or to weigh the evidence; to consider the credibility of witnesses; or to resolve conflicts in, or make inferences or deductions from the evidence. We review a cold record and, unlike a trial court, have no opportunity to observe the appearance and demeanor of the witnesses." (*In re Sheila B.* (1993) 19 Cal.App.4th 187, 199.)

B.      Analysis

Ernesto challenges the sufficiency of the evidence to support the court's jurisdictional findings under section 300, subdivisions (a) and (d). He first argues the evidence was insufficient to support that Victoria suffered "serious physical harm." He also argues the trial court erred by accepting Victoria's version of events because she is

8

not credible and "simply [does] not want to live with her father."  He highlights perceived inconsistent testimony or past falsehoods by Victoria.

We conclude substantial evidence supports the juvenile court's jurisdictional findings under section 300, subdivisions (a) and (d).  Jurisdiction under section 300, subdivision (a) is appropriate when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian."  In determining whether a child is at risk of serious physical harm, the court may consider "the manner in which a less serious injury was inflicted" and "other actions by the parent" indicative of a risk of serious physical harm. (§ 300, subd. (a); see *In re N.M.* (2011) 197 Cal.App.4th 159, 169 [reasonable to infer that instances of hitting, kicking, and slapping, constituted a pattern of physical abuse]; *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 599-600 [history of hitting, slapping, beating and choking gave rise to risk of serious physical harm].)

Jurisdiction under section 300, subdivision (d) is appropriate when "[t]he child has been sexually abused."  A minor's uncorroborated testimony regarding sexual molestation may be sufficient to support a finding of sexual abuse.  (*In re P.A.* (2006) 144 Cal.App.4th 1339, 1343-1344 [although nine-year-old daughter's accounts varied in details on sexual touching, "each account related essentially the same two incidents that occurred on successive nights" sufficient to sustain the petition under section 300, subdivision (d)].)

Based on our review of the record, sufficient evidence supported the findings that Victoria suffered serious physical harm, and was at substantial risk of serious physical

9

harm, by Ernesto. The juvenile court found the notion that Victoria had manufactured two different physical altercations to escape her father's strict household "patently absurd." School administrators, social workers, and medical doctors observed the extent of Victoria's debilitating physical injuries, which were also photographed. The court recounted in detail the family's history, household dynamics, and two physical fights that had escalated in violence. It found Ernesto's testimony about the altercations unbelievable insofar as his characterization of Victoria as the aggressor, specifically noting that Ernesto had not been injured, he maintained "extraordinary control" over her, he insisted he had the "right" to slap her if needed as a parenting method, and he was bulkier and more muscular. The court acknowledged instances of past falsehoods by Victoria, including a false allegation of rape, but noted the event had occurred in 2012 in a different scenario and she had immediately recanted when confronted by police. In contrast, her report of physical abuse by Ernesto had not varied, even under intense scrutiny.

Similarly, in support of its jurisdictional finding under section 300, subdivision (d), the court credited Victoria's testimony regarding inappropriate sexual touching by Ernesto as plausible and consistent. Although initially skeptical of molestation due to Victoria's delayed disclosure, the court found her testimony believable under the circumstances because Victoria loved her father and thought she had nowhere else to go, she needed urgent help for her physical injuries and the sexual touching had been a secondary concern, she had minimized rather than exaggerated allegations of sexual abuse, and then only disclosed the molests when directly questioned. Victoria had

10

consistently repeated her claims of inappropriate sexual touching to two different social workers, a doctor in the emergency room, a forensic interviewer, and the court.

Ernesto essentially asks us to make credibility determinations and reweigh evidence, which we may not do.  (*In re Lana S.* (2012) 207 Cal.App.4th 94, 104.) Substantial evidence supported the juvenile court's jurisdictional findings.

DISPOSITION

The order is affirmed.


McDONALD, J.

WE CONCUR:


HUFFMAN, Acting P. J.


O'ROURKE, J.


11